S02G0871. JOHNSON v. AMERICAN NATIONAL RED CROSS.
(578 SE2d 106)

HINES, Justice.

We granted certiorari to the Court of Appeals in *Johnson v. American Nat. Red Cross,* 253 Ga. App. 587 (569 SE2d 242) (2002), to consider whether it erred in applying *McAllister v. American Nat. Red Cross,* 240 Ga. 246 (240 SE2d 247) (1977), and *Russaw v. Martin,* 221 Ga. App. 683 (472 SE2d 508) (1996), to bar negligence claims against the defendant American National Red Cross a/k/a American Red Cross ("Red Cross"). The suit arose from the Red Cross's acceptance of blood from a donor who had lived in a region in Africa where a rare and undetectable strain of human immunodeficiency virus ("HIV") was known to exist and the subsequent transfusion of such blood. For the reasons which follow, we affirm the judgment of the Court of Appeals upholding the grant of summary judgment to the Red Cross on the negligence claims.

The following facts giving rise to this suit are detailed in the opinion of the Court of Appeals. Prior to her death at age 75, Bernice Mantooth suffered from multiple serious medical conditions including emphysema, anemia, angina, breast cancer, heart disease, lung cancer, asthmatic bronchitis, diabetes, kidney failure, and pneumonia. On August 29, 1998, Mantooth went to the Cartersville Medical Center ("CMC") emergency room complaining of chest pain and shortness of breath. She was examined by Dr. David Kim, who was on-call for her personal physician, Dr. Sam Howell, and she was diagnosed with exacerbation of emphysema.

Dr. Kim ordered that Mantooth receive two units of blood. Fifteen minutes after the transfusion began, Mantooth complained of severe pain in the left side of her chest that radiated down her left shoulder and arm and into her back. Mantooth was transferred to the intensive care unit, where she was treated for asthma, congestive heart failure, and chest pain. After she was stabilized, Mantooth was transferred to Crawford Long Hospital and was discharged several days later. She was subsequently diagnosed with lung cancer.

On October 28, 1998, the Red Cross notified CMC that it had supplied the hospital with blood that did not meet Red Cross stan-

dards. The Red Cross normally did not permit people who had lived in parts of Africa for more than 12 months to donate blood. The Red Cross discovered that the blood given to Mantooth had come from a donor who had lived for 13 months in a region of Africa where a rare and undetectable strain of HIV known as "Group O" had been found. The donor did not test positive for HIV in the five years between his stay in Africa and the time when he donated blood, nor was there any reason, other than his stay in Africa, to believe he had been exposed to the virus. On November 4, 1998, CMC notified Mantooth's physician, Dr. Howell, about the situation.

Approximately a month later, Dr. Howell informed Mantooth that the blood she had received should not have been accepted by the Red Cross. Mantooth underwent HIV tests in December 1998, March 1999, and April 1999, all of which were negative. On December 24, 1998, the Red Cross sent Mantooth a letter apologizing for the concern that her transfusion had caused her, and informing her that no case of transfusion transmitted "Group O" HIV disease had been reported; that the donor appeared to be in good health and that his test results were completely negative at the time of his donation in 1998; that it was most unlikely that the donor was suffering from any infectious disease; and that the chance of transmitted HIV disease was "extremely remote."

Mantooth was very upset about the possibility that she had been exposed to the strain of HIV, and she claimed that she lived in fear that she had the virus and would pass it to family members. Mantooth did not, however, seek medical treatment for emotional distress or for physical injury allegedly caused by the transfusion.

On August 27, 1999, Mantooth filed suit alleging, inter alia, that Drs. Kim and Howell were negligent, and that CMC was vicariously liable. She also included claims of negligence and the negligent and intentional infliction of emotional distress against the Red Cross. The trial court granted summary judgment to the Red Cross after concluding that Mantooth failed to present any evidence that she was actually exposed to HIV, and there was no basis for her claims of negligence or infliction of emotional distress. After Mantooth's death on May 23, 2001, Lester Johnson, the executor of her estate (the "Estate"), continued to pursue her claims.

The Estate appealed, and the Court of Appeals affirmed the trial court's grant of summary judgment to the Red Cross on the negligence claims.[1] In so doing, the Court of Appeals agreed with the trial

---

[1] The trial court also granted the Red Cross's motion to open default, summary judgment in favor of the Red Cross on the claim of intentional infliction of emotional distress, and CMC's motion for partial summary judgment on the question of vicarious liability for the doctors' conduct. These rulings were also affirmed by the Court of Appeals; however,

court that Mantooth's failure to demonstrate recoverable damages was fatal to the claims. Citing *McAllister v. American Nat. Red Cross*, supra, and *Russaw v. Martin*, supra, the Court of Appeals reasoned that Mantooth was not exempt from the legal requirement of demonstrating "actual exposure" to HIV in order to recover damages for emotional distress resulting from the Red Cross's negligence.

1. The Estate contends that the Court of Appeals clearly erred in precluding any recovery against the Red Cross for negligence when the Estate proved each element of negligence. But the Estate failed to show the existence of recoverable damages in support of the negligence claims asserting physical injury and/or financial loss.

"It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: 'a duty, a breach of that duty, causation and damages.' [Cit.]" *Royal v. Ferrellgas*, 254 Ga. App. 696, 698 (1) (a) (563 SE2d 451) (2002). The Estate argues that the Red Cross's duty is clear, the breach of that duty certain, and that Mantooth suffered damages, physical as well as emotional, directly caused by the breach of duty. It cites damages Mantooth experienced after learning of the problem with the blood, including Mantooth's undergoing HIV tests, the medical charges incurred for those tests, and her pain and treatment expenses and extended hospitalization because of and following the blood transfusion.

But as noted in the opinion of the Court of Appeals, Mantooth did not produce evidence of any physical injuries or financial losses proximately caused by the Red Cross's failure to follow its standards. *Johnson v. American Nat. Red Cross*, supra at 592 (2). There is no evidence that any adverse physical reactions suffered by Mantooth during or after the blood transfusion, or her subsequent hospitalization, had anything to do with the quality of blood she received, that is, there was no link to the Red Cross's alleged breach of duty in accepting the transfused blood. Insofar as the Estate has alleged damages, physical and financial, as the result of Mantooth's undergoing several tests for HIV, Mantooth's deposition testimony was that she did not have any medical expenses as a direct result of the transfusion.[2] Moreover, the undisputed evidence is that these tests would not have disclosed the presence of the "Group O" virus, which was the concern resulting from the Red Cross's acceptance of the transfused

---

they are not at issue in this review pursuant to the grant of certiorari.

[2] Any statement by Mantooth in affidavit that she incurred medical expenses, for HIV testing or otherwise, due to the Red Cross is, without reasonable explanation, contradictory to her deposition testimony, and therefore, would not assist the negligence claims in surviving summary judgment. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

blood at issue. There is no evidence that acceptance of the particular donor's blood put Mantooth at increased risk of contracting other strains of HIV. " ' "[N]egligence is not actionable unless it is the proximate cause of the injury. A wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." ' " *Dry Storage Corp. v. Piscopo*, 249 Ga. App. 898, 900 (550 SE2d 419) (2001).

The Estate also argues that the Court of Appeals improperly extended and misapplied *McAllister v. American Nat. Red Cross*, supra, to immunize the Red Cross from negligence, and ignored *McAllister's* express language approving and authorizing negligence claims against sellers and collectors of blood.

It is certainly true as the Estate maintains that in *McAllister*, this Court held that blood suppliers like the Red Cross could not be held liable under a strict liability standard but that they were not exempt from negligence claims. Id. at 246-248 (1). However, the Estate mischaracterizes the Court of Appeals's treatment of *McAllister*.

The Court of Appeals did not treat Mantooth's claims as though they sounded in strict liability. The Court of Appeals plainly acknowledged that in *McAllister*, this Court "exempted suppliers of blood from being held strictly liable under a product liability theory." *Johnson v. American Nat. Red Cross*, supra at 593 (2). The Court then correctly noted that *McAllister* "recognized that blood banks could not survive if they were subject to liability for a blood recipient's fear of catching an undetectable disease in the absence of a full showing of negligence." *Johnson v. American Nat. Red Cross*, supra at 593 (2). Thus, the Court of Appeals cited *McAllister* to counter the Estate's argument that the Red Cross could be held liable under any theory for failing to eliminate the risk of undetectable diseases from the blood it supplies.

As there was no evidence of a physical injury or financial loss to Mantooth proximately caused by the purported breach of duty by the Red Cross, summary judgment was proper on the negligence claims.

2. The Court of Appeals having correctly determined that the Estate's negligence claims for physical injury and financial loss could not survive summary judgment, see Division 1, the only remaining question of negligence was whether the Estate's claim for damages for Mantooth's emotional distress was foreclosed by *Russaw*. The Estate argues that by applying *Russaw* to bar Mantooth's recovery for emotional distress, the Court of Appeals created an inflexible burden, impossible to meet, which deemed Mantooth's reasonable fears "per se unreasonable." It argues that while in *Russaw*, "evidence of actual exposure" was one indication of reasonableness, it has now

been made the touchstone for liability rather than the reasonableness of the plaintiff's fears, which is the appropriate and relevant inquiry. But that is a misinterpretation of *Russaw*, and a mischaracterization of the plaintiff's burden.

In *Russaw*, a woman was awaiting treatment for her daughter at a hospital emergency room at the same time as an elderly patient was being treated. An emergency room nurse capped a needle used in a heparin lock to administer anti-anxiety medication to the elderly patient, and put the syringe and needle into her pocket along with her pen and keys. As the nurse attempted to remove the keys from her pocket in an effort to distract the woman's daughter, the hypodermic needle intertwined with the keys and fell out, striking and puncturing the woman's thigh and drawing blood. The needle was considered to be "contaminated," although it had not come into contact with the elderly patient's bodily fluids, and the woman was informed of her rights concerning blood testing for hepatitis and HIV infection. The woman consented to a blood test, and within ten days she received a test report indicating that she had tested negatively for hepatitis and HIV; the elderly patient also tested negatively for hepatitis and HIV. Over the next few months, the woman and her husband had additional tests performed, all with negative results. The couple sued the nurse and the hospital alleging, inter alia, negligence. On cross-motions for summary judgment, the trial court determined that any claim for mental anguish based on fear of contracting hepatitis or acquired immune deficiency syndrome ("AIDS") in the future was speculative and not compensable.

The Court of Appeals determined that to allow the plaintiff recovery for emotional injuries and mental anguish without any proof that she was actually exposed to HIV or hepatitis was "per se unreasonable." *Russaw*, supra at 686 (1). In so holding, the Court of Appeals rightly reasoned that

> [i]t is axiomatic that for recovery, there must be some reasonable connection between the act or omission of a defendant and the damages which a plaintiff has suffered. [Cit.] Without factual evidence of a causal connection between the alleged breach of duty and the purported damages, the damages must be considered whimsical, fanciful and above all too speculative to form the basis of recovery. . . .

Id.

Thus, *Russaw* sets forth a requirement of evidence of "actual exposure" in addition to a "channel of communication" in order to

allow recovery for emotional injuries and mental anguish.[3] *Russaw*, supra at 686 (1). As in *Russaw*, here the Estate offered no evidence of "actual exposure"; there was no evidence that the blood Mantooth received was contaminated with "Group O" or any other strain of HIV or that Mantooth contracted HIV as a result of the transfusion.

But the Estate claims that it was impossible for Mantooth to show exposure because the "Group O" strain is undetectable by blood or other testing. However, this assertion overlooks the fact that proof of "actual exposure" is not limited to the results of medical testing. Mantooth could have shown her exposure to HIV by the experience of symptoms of HIV or AIDS, by her or the donor, or by another to whom Mantooth or the donor might have transmitted HIV. But Mantooth failed to offer evidence of exposure in any manner; she made no showing that any of her physical ailments were the result of exposure to HIV in any form or were the product of anything other than her known numerous, serious, and independent medical conditions.

Although the reasonableness of a plaintiff's fears is clearly tied to the question of "actual exposure," this case illustrates the wisdom of requiring a showing of "actual exposure" as a precursor to recovery rather than its mere consideration as a factor of reasonableness. Mantooth admitted in deposition testimony that the basis for her belief that she was given "bad blood" was the letter from the Red Cross; the letter stated that the chances that Mantooth had received tainted blood were "extremely remote" and that "[n]o case of transfusion transmitted HIV disease has yet been reported." Mantooth too was advised by her personal physician not to worry. But regardless of Mantooth's choice to disregard any reassurances, the facts are that there was no evidence whatsoever that the donor was infected with any form of HIV, and that Mantooth herself repeatedly tested negative for HIV and failed to manifest any symptoms linked to HIV exposure or infection. In the face of this complete absence of evidence of exposure, Mantooth feared that she was infected with the virus. However, the evidence compels a finding that Mantooth's fears were unreasonable as a matter of law.

The Court of Appeals properly applied *Russaw* to find that the Estate failed to carry its burden with regard to the claim of negligent infliction of emotional distress.

*Judgment affirmed. All the Justices concur.*

---

[3] The requirement of having to show "actual exposure" as a predicate to recovery is the view in a majority of state jurisdictions which have considered the question of the plaintiff's burden to recover for fear of HIV/AIDS claims. See Eric S. Fisher, AIDSPhobia: A National Survey of Emotional Distress Claims for the Fear of Contracting AIDS, Tort & Ins. L.J. 169, 176-179 (Fall 1997).

DECIDED FEBRUARY 24, 2003.

*Bird & Associates, Wendell R. Bird, Richard L. Brittain*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Alan M. Maxwell, Christopher H. Smith, Nelson, Mullins, Riley & Scarborough, Jeffrey C. Baxter, McMillian & Camp, Lance P. McMillian*, for appellee.