[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12243

_____

D. C. Docket No. 04-00606 CV-RWS-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 18, 2007
THOMAS K. KAHN
CLERK

NEAL PARKER,
WILBERT CARLTON,
STEPHEN KING,
RAY BURNS,
DEBORAH WATKINS,
LEONARD PONDER,
BARBARA KING,
PATRICIA BURNS,
All individually and as Representative Plaintiffs
on behalf of all other similarly situated,

                                        Plaintiffs-Appellants,

        versus

BRUSH WELLMAN, INC.
SCHMIEDE MACHINE AND TOOL CORPORATION,
THYSSENKRUPP MATERIALS NA, INC.,
d.b.a. Copper and Brass Sales,
ALCOA, INC.,
MCCANN AEROSPACE MACHINING CORPORATION,

                                        Defendants-Appellees,

AXSYS TECHNOLOGIES, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(April 18, 2007)**

Before EDMONDSON, Chief Judge, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants ("Plaintiffs"), a group of 120 current and former employees of Defendant-Appellee Lockheed Martin ("Lockheed") and their families, appeal from the district court's dismissal of their suit against Defendants-Appellees Brush Wellman, Inc., Schmiede Machine and Tool Corporation, Thyssenkrupp Materials NA, Inc. (d/b/a Copper and Brass Sales), Alcoa, Inc., and McCann Aerospace Machining Corporation (collectively, "Defendants"), in which Plaintiffs sought to recover damages for personal injuries allegedly sustained due to Defendants' manufacture, use, and discharge of beryllium, a hazardous substance. We affirm the district court's dismissal of Plaintiffs' claim for a medical monitoring fund and of those claims based on allegations of "subclinical" injury. But, because we conclude that the district court prematurely granted Defendants judgment on Plaintiffs' claims of beryllium sensitization, we vacate that judgment and remand for further proceedings.

## I. BACKGROUND

Plaintiffs filed this putative class action in a state court. The Complaint alleges that Defendants are involved in the manufacture, use, or discharge, or all of these, of beryllium. Plaintiffs contend that they were exposed to respirable forms of beryllium from certain products used at Lockheed's Marietta, Georgia, facility. The Complaint alleges that Defendants either knew or should have known that beryllium can cause various adverse health consequences and that Plaintiffs' activities at Lockheed would result in harmful exposure to the substance.

Plaintiffs assert that, as a result of their exposure, they "have suffered and will suffer in the future personal injuries in the form of sub-clinical, cellular, and sub-cellular damage and some have suffered from acute and chronic lung disease, dermatologic disease, and chronic beryllium disease ("CBD")." Plaintiffs also contend that they "have been placed at substantially increased risk of catastrophic latent disease, such as chronic beryllium disease and cancer," and "have suffered and will suffer in the future from fear, anxiety, and emotional upset" because of their personal injuries and increased risk of disease. The Complaint includes

claims for medical monitoring, strict liability, negligence, fraudulent concealment, civil conspiracy, punitive damages, and attorneys' fees.

Lockheed removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1). Defendants filed various motions to dismiss, motions for judgment on the pleadings, and motions for a more definite statement. The district court ruled that those claims relying on "sub-clinical, cellular, or sub-cellular" injuries were not cognizable under Georgia law, concluding that Georgia only allows tort recovery for injuries with "manifest physiological symptoms." The district court noted that it would enter an order dismissing those "subclinical" claims after Plaintiffs filed an amended pleading identifying those plaintiffs who had sustained "actionable tort injuries." The court similarly granted Defendants' motions to dismiss "these 'subclinical' Plaintiffs' claims for increased risk and negligent infliction of emotional distress" and for medical monitoring.

Plaintiffs then filed a Substituted Amended Complaint ("Amended Complaint"), in which they identified five persons "whose injuries have manifested themselves such that they have been detected by physical examination and/or laboratory test." Plaintiffs also repeated their allegation that all Plaintiffs had "sustained subclinical, cellular, and subcellular effects that constitute physical injuries." In response, Defendants moved to enforce the district court's earlier

order, arguing that the five specified plaintiffs alleged only beryllium sensitization, which is not an actionable injury even when detected by clinical tests. Because both parties submitted expert affidavits, the district court, with the consent of the parties, treated Defendants' motion as a motion for summary judgment. The court granted Defendants' motion, concluding that, even accepting the Plaintiffs' expert's opinion, beryllium sensitization constituted no actionable injury under Georgia law. Because Plaintiffs had put forth no other claims, the court dismissed the case.

## II. STANDARD OF REVIEW

Defendants argue that the district court dismissed only the medical monitoring claim in Count I before the summary judgment stage, but the district court's opinion specifically stated that the court was granting Defendants' motion to dismiss on the "subclinical" claims. The later order therefore only dealt with the claims of the five plaintiffs who further alleged beryllium sensitization. We review the rulings in the first order under Fed. R. Civ. P. 12(b)(6), which governs motions to dismiss for failure to state a claim, and review the ruling in the second order under Fed. R. Civ. P. 56, which applies to motions for summary judgment.

We review a district court's dismissal of a claim under Rule 12 <u>de novo</u>, accepting the well-pleaded factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. <u>Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1246 (11th Cir. 2005). A dispositive Rule 12 motion may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u>

We also review the district court's grant of summary judgment <u>de novo</u>, viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party. <u>Hall v. United Ins. Co. of America</u>, 367 F.3d 1255, 1262 (11th Cir. 2004). Summary judgment is proper only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. <u>Id.</u>

The parties acknowledge that the legal questions presented in this case are governed by Georgia law. "In rendering a decision based on state substantive law, [we] must decide the case the way it appears the state's highest court would. Where the state's highest court has not spoken to an issue, [we] must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."

6

Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004) (alterations in original) (internal quotation marks and citation omitted).

III.  DISCUSSION

A.  Plaintiff's "Subclinical" Injury Claims

Plaintiffs contend that the district court erred in concluding, as a matter of law, that allegations of subclinical damage could not support an award of damages for personal injury and emotional distress.  Plaintiffs argue that, under Georgia law, the question of whether the alleged subclinical damage constitute a physical injury is one of fact that cannot be resolved on the pleadings.  We disagree.

To recover for personal injuries under Georgia law, a plaintiff must show that he has suffered "injury to life or limb or damage to other property."  Pickren v. Pickren, 593 S.E.2d 387, 388 (Ga. Ct. App. 2004).  Georgia similarly allows recovery of damages for emotional distress upon a showing of "(1) a physical impact to the plaintiff; (2) the physical impact cause[d] physical injury to the plaintiff; and (3) the physical injury to the plaintiff cause[d] the plaintiff's mental suffering or emotional distress."  Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82,

85 (Ga. 2000). Thus, to the extent that Plaintiffs' allegations of subclinical damage are insufficient to support a claim for physical injury, they are also insufficient to support a claim for emotional distress.[1]

In the leading Georgia case dealing with exposure to a toxic substance, the Court of Appeals indicated that a personal injury plaintiff must present evidence of "actual disease, pain or impairment of some kind." Boyd v. Orkin Exterminating Co., Inc., 381 S.E.2d 295, 298 (Ga. Ct. App. 1989), overruled on other grounds, Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994). In Boyd, homeowners sued a pest control company for negligently applying insecticide inside their home, which resulted in the exposure of themselves and their children to harmful levels of toxic substance. Boyd, 381 S.E.2d at 296. At trial, the plaintiffs presented evidence demonstrating the presence of elevated levels of toxin metabolites in their children's blood. They also adduced medical expert testimony stating that the elevated levels, in themselves, constituted an "injury" and that the children would require periodic monitoring to determine

---

[1] Plaintiffs' reliance on the HIV-exposure case Johnson v. American Nat'l Red Cross, 578 S.E.2d 106 (Ga. 2003), in support of their emotional distress claim is misplaced. Plaintiffs argue that they have stated a claim for fear of future disease because they have alleged "actual" exposure to a disease-causing agent and a "channel of communication" through which exposure took place. But Johnson did not address whether a the plaintiff had sufficient physical injury to recover emotional distress damages; the court merely concluded that a failure to show actual exposure was fatal to the plaintiff's claim. And the earlier case of Russaw v. Martin, 472 S.E. 2d 508, 510 (Ga. Ct. App. 1996) – on which Johnson relied, see Johnson, 578 S.E.2d at 109-10 -- indicates that even those suing for emotional distress due to HIV exposure must allege and prove a physical injury.

whether they were developing health problems associated with the toxic exposure. Id. But, the appellate court upheld the directed verdict for the defendant, concluding that "there was no evidence that the appellants had sustained any specific injury." Id. at 297-98.

Here, the district court read Boyd to "apparent[ly] reject[] subclinical effects as actionable 'injuries.'" We agree. According to the Boyd appellate opinion, the trial evidence in Boyd consisted of medical testimony that the presence of the elevated levels of toxin metabolites, by itself, was an injury; the medical testimony did not show that those metabolites "had caused or would eventually cause actual disease, pain or impairment." Id. at 298. Likewise, Plaintiffs here have alleged that the subclinical and cellular damage from their exposure, by itself, is an injury. But Plaintiffs have not alleged that this subclinical damage has resulted in an identifiable physical disease, illness, or impairing symptoms. And to the extent that Plaintiffs allege that their subclinical condition will eventually cause – or will at least increase their risk of developing – future disease, pain, or impairment, Plaintiffs concede that they do not seek current compensation for this anticipated harm.[2] Instead, Plaintiffs rest their personal injury claims on the contention that

---

[2]In this manner, Plaintiffs are similarly situated to the claimants in Boyd, who introduced evidence that the elevated toxin levels, while not impairing the children's present health, increased their risk of developing cancer. Boyd, 381 S.E.2d at 298. But even if Boyd can be read to allow recovery where the subclinical effects of exposure are shown to increase – to a "reasonable degree

their allegations of subclinical and cellular damage are sufficient to allege a current physical injury under Georgia law; because we reject this argument, Plaintiffs' claims for personal injury and emotional distress must fail.[3]

And because Plaintiffs' allegations of subclincial damage are insufficient to state a current physical injury, Plaintiffs are not entitled to recover the "quantifiable costs of periodic medical examinations" as future medical expenses. See Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1504 (11th Cir. 1985)

---

of medical certainty" -- the risk of manifest disease or impairment, see id. at 298, Plaintiffs concede that they do not seek recovery for this "enhanced risk."

[3]We are aware that some courts have allowed tort claims based on allegations of subclinical or cellular "injury" in exposure cases, in some cases treating such an allegation as one of latent disease. See, e.g., Weirlein v. United States, 746 F.Supp. 887, 901 (D. Minn. 1990), vacated in part on other grounds, 793 F.Supp. 898 (D. Minn. 1992); Barth v. Firestone Tire & Rubber Co., 661 F.Supp. 193, 196 (N.D. Cal. 1987); Brafford v. Susquehanna Corp., 586 F.Supp. 14, 17-19 (D. Colo. 1984).

But we think that, in Georgia, the more persuasive position is that an allegation of subclinical damage does not satisfy Boyd's requirement of an actual "disease" or "impairment," even if it is a predictor of future disease. See, e.g., Rainer v. Union Carbide Corp., 402 F.3d 608, 618-22 (6th Cir. 2005) (concluding that, under Kentucky law, allegations of "subcellular damage" were insufficient to satisfy the requirement of "bodily injury" for recovery under the Price-Anderson Act where plaintiffs lacked "present physical illness" but introduced evidence that "chromosomal damage is directly linked with an increased likelihood of cancer"); Schweitzer v. Consol. Rail Corp., 758 F.2d 936, 942 (3rd. Cir. 1985) ("We believe . . . that subclinical injury resulting from exposure to asbestos is insufficient to constitute actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law."); Laswell v. Brown, 683 F.2d 261, 269 (8th Cir. 1982) (concluding that allegations of exposure to an "unusually high risk of disease in genetically passed cellular" damage was insufficient to state a claim where the complaint was "conspicuously void of . . . allegations that the children have sustained . . . damage other than the exposure to a higher risk of disease and cellular damage" (emphasis added)); cf. Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co., 682 F.2d 12, 19-20 (1st Cir. 1982) (examining various definitions of "injury" and "disease" and concluding that insurance policies could not be construed to cover subclinical changes that did not cause impairment "until, if ever, they accumulate to become clinically evidence or manifest").

10

(allowing recovery of future medical expenses that are reasonably certain to be incurred as a result of plaintiff's current physical injury).  Plaintiffs have failed to point us to any Georgia authority that allows recovery of medical monitoring costs in the absence of a current physical injury, and <u>Boyd</u> suggests that Georgia would not recognize such a claim.[4]  <u>See</u> <u>Boyd,</u> 381 S.E.2d at 298 (affirming partial summary judgment to defendants where plaintiffs "merely produced medical testimony that the children would require monitoring in the future to determine whether they developed health problems due to their exposure to the chemicals").  The district court therefore correctly dismissed Plaintiffs' claim for a medical monitoring fund in Count I of the Complaint.

## B.  Plaintiffs' Beryllium Sensitization Claims

Plaintiffs also contend that the district court improperly granted summary judgment to Defendants based on the court's conclusion that beryllium sensitization – a clinically-manifest condition -- constituted no actionable injury

---

[4]Whether courts should recognize a medical monitoring cause of action in the absence of a present physical illness or impairment is not well-settled nationwide.  <u>See</u>, <u>e.g.</u>, <u>Paz v. Brush Engineered Materials, Inc.</u>, 949 So.2d 1, 6-7 (Miss. 2007) (collecting cases from different jurisdictions and then declining to recognize medical monitoring actions absent allegations of present physical injury under Mississippi law, which "requires the traditional elements of proof in a tort action").

under Georgia law. Plaintiffs argue that the medical expert affidavits established that a material issue of fact exists on whether beryllium sensitization is a current "disease, pain or impairment." We agree.

Plaintiffs' expert, Dr. Maier, opined that beryllium sensitization is "an abnormal immune response" that is "comparable to an allergy" and "an important precursor to [CBD]." Dr. Maier indicated that approximately six to eight percent per year of sensitized persons develop CBD and stated that "[i]t is likely that the majority of individuals with sensitization will eventually develop CBD." She also compared sensitization with HIV and pleural plaques, other immunological conditions that have a "high risk" of developing into more serious diseases. Dr. Maier concluded that "it is clear that beryllium sensitization is a marker of injury to beryllium."

In contrast, while Defendants' expert, Dr. Repsher, agreed that beryllium sensitization is similar to an allergy, he stated that the condition is a "part of a normally functioning and healthy immune system" that does not result in any "structural or functional changes" in the body. Instead, a sensitized person is merely "capable of having a harmful, allergic-type reaction to beryllium in the future." He also opined that the condition "cause[s] no impairment or harm of any kind" and that a sensitized person may never develop CBD. He disagreed with Dr.

12

Maier's analogy to pleural plaques and also stated that sensitization appears to be reversible, as some people who test positively for the condition later test negative.

In sum, the parties' experts disagree on whether the beryllium sensitization is a current disease or impairment and on the probability that the condition will later develop into CBD. These issues are questions of fact that should be answered by a jury, and summary judgment was therefore improper.

## IV. CONCLUSION

We conclude that Plaintiffs' allegations of injury in the form of subcellular, subclinical, and cellular harm are insufficient to survive Defendants' motions to dismiss on their claims for damages for personal injury and emotional distress. We also decide that the district court correctly determined that Georgia law does not currently allow for recovery of medical monitoring costs. But we conclude that Plaintiffs' expert testimony creates a genuine dispute of material fact on whether beryllium sensitization is a current physical impairment; summary judgment was therefore inappropriate on the claims of the five plaintiffs identified as being sensitized. For these reasons, the district court's rulings are affirmed in

part and vacated in part; and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.