# IN THE COURT OF APPEALS OF IOWA

No. 19-0273
Filed September 23, 2020

**DANIELLE BECERRA-SHAFFER, STACI BOYER, JOHN DOUGLAS, MICHAEL PREVOST and DANNY WILSON,**
    Plaintiffs-Appellants,

**vs.**

**CENTRAL IOWA HOSPITAL CORPORATION d/b/a IOWA METHODIST MEDICAL CENTER,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Randy V. Hefner, Judge.

The appellants appeal the district court's decision granting summary judgment to Central Iowa Hospital Corporation, operating as Iowa Methodist Medical Center, on their claims of negligence and infliction of emotional distress arising from the actions of a pharmacy technician. **AFFIRMED.**

Matt J. Reilly of Trial Lawyers for Justice, Decorah, for appellants.

Jack Hilmes, Kevin J. Driscoll, Erik P. Bergeland, Andrew T. Patton, and Jeffrey R. Kappelman of The Finley Law Firm, P.C., Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Plaintiffs appeal the district court's decision granting summary judgment to Central Iowa Hospital Corporation, operating as Iowa Methodist Medical Center (IMMC), on their claims of negligence and infliction of emotional distress arising from the actions of a pharmacy technician. The appellants concede that they were not actually exposed to a communicable disease. We conclude their claims for emotional distress are too remote and speculative for them to be entitled to relief and were unreasonable as a matter of law. We conclude the district court properly granted summary judgment to IMMC.

## I.  Background Facts & Proceedings

Victor Van Cleave was employed by IMMC from August 22 through October 7, 2016, as a pharmacy technician. As part of his employment, he had access to fentanyl and hydromorphone. As part of a plea agreement,[1] Van Cleave admitted:

> While employed as described above, [Van Cleave] tampered with the Hospital's Fentanyl and Fentanyl vials. In particular, [Van Cleave] inserted a syringe into multiple Fentanyl vials, removed the Fentanyl with that syringe, and injected the Fentanyl into himself. Using a different syringe, [Van Cleave] then replaced the Fentanyl he had removed from the vials with a different fluid. [Van Cleave] then placed the tampered vials back into storage at the Hospital.

Each of the plaintiffs was hospitalized at IMMC while Van Cleave was employed there.

After Van Cleave's actions were discovered, he tested negative for Hepatitis B, Hepatitis C, and HIV. IMMC notified patients: (1) they may have received diluted

---

[1]  Van Cleave pled guilty to a federal charge of tampering with consumer products, in violation of Title 18, § 1365(a)(4).

medication while in the hospital; (2) the responsible employee tested negative for infection; (3) IMMC believed "there [was] NO risk of infection from this employee"; and (4) IMMC was "offering free blood testing for your peace of mind." Patients could receive an initial blood test and then a second one six months later.

This factual situation resulted in multiple lawsuits involving 255 plaintiffs. The lawsuits raised claims of (1) negligence, (2) res ipsa loquitur, (3) respondeat superior, (4) negligent hiring, (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) medical battery, and (8) lack of informed consent. These cases were consolidated.

Based on computer tracking of the use of fentanyl and hydromorphone at the hospital, IMMC determined there was no possibility that seventy-six of the plaintiffs received diluted medication.[2] In the lawsuits involving these seventy-six plaintiffs, IMMC filed a motion for summary judgment, claiming the plaintiffs could

---

[2] In an affidavit, Brian Benson, the director of pharmacy of IMMC, stated the seventy-six patients did not receive a diluted dose of fentanyl or hydromorphone for these reasons:

  a. The patients did not receive Fentanyl or Hydromorphone from 2 milliliter vials during their hospitalization; [or]

  b. The patients received Fentanyl or Hydromorphone from 2 milliliter vials from dispensing Omnicell machines that Victor Van Cleave never accessed; [or]

  c. The patients received Fentanyl or Hydromorphone prior to Victor Van Cleave having accessed the dispensing Omnicell machine; [or]

  d. The Plaintiffs were not a patient at IMMC during Victor Van Cleave's employment; or

  e. The Plaintiffs received Fentanyl or Hydromorphone from a Pyxis machine; or

  f. The Omnicell pocket from which a Plaintiff was provided Fentanyl or Hydromorphone had been emptied after Victor Van Cleave's last entry of that pocket, and then the pocket was restocked with new inventory by a different pharmacy technician before the patient was issued medication from the pocket.

not have been injured by Van Cleave's actions. Plaintiffs resisted the motion, stating IMMC's negligence "caused the Plaintiffs to be subject to increased pain and suffering, increased lab and blood testing, and increased anxiety for fear of contracting a disease, and emotional distress," even if they had not received diluted fentanyl or hydromorphone. IMMC replied to the resistance, claiming plaintiffs could not recover damages related to fear of possible exposure to disease when there was no evidence of actual exposure. It also asserted the plaintiffs were not entitled to damages based on the method IMMC used to inform them of Van Cleave's conduct.

After a hearing, the district court granted the motion for summary judgment. First, the court found the plaintiffs were not entitled to damages for emotional distress based on possible exposure to a communicable disease when there was no showing of actual exposure. Second, the court noted that while in some instances there may be "potential liability for emotional distress absent physical injury," this applied only when the plaintiff "*personally* experience[d] the alleged negligent conduct," which did not occur in this case. Third, the court determined the plaintiffs could not recover damages for emotional distress due to IMMC's notification about Van Cleave's conduct, as IMMC did not breach its duty to provide timely and clear notice. Fourth, the court concluded the plaintiffs could not recover damages based on IMMC's offer to provide blood testing.

This appeal was brought by the plaintiffs who had their claims dismissed based on the district court's ruling on the motion for summary judgment. While the case was pending on appeal, all but five of the plaintiffs voluntarily dismissed their appeal. The remaining appellants are Staci Boyer, Danielle Becerra-Shaffer, John

Douglas, Michael Prevost, and Danny Wilson.[3]  We refer to these parties as the appellants.

## II.      Standard of Review

We review a district court's decision granting summary judgment for the correction of errors of law.  *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).  The Iowa Supreme Court has stated:

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts.  When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139–40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)).  "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions."  *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019) (citation omitted).  The party seeking summary judgment has the burden to show there are no genuine issues of material fact and the party is entitled to a judgment as a matter of law.  *Id.*

---

[3]  Boyer is a plaintiff in LACL137082; Becerra-Shaffer is a plaintiff in LACL137800; and John Douglas, Michael Prevost, and Danny Wilson are plaintiffs in LACL141079.

### III.     Discussion

The appellants claim the district court improperly granted IMMC's motion for summary judgment.  They state that even if they did not receive diluted medicine, IMMC has not established as a matter of law that they were not harmed as a result of IMMC's negligence.   The appellants claim IMMC negligently hired and supervised Van Cleave.  They also claim that due to IMMC's negligence, they were "subject[ed] to increased pain and suffering, increased lab and blood testing, and increased anxiety for fear of contracting a disease, and emotional distress."  They point out that they had a reasonable fear of contracting a disease, which continued for a period of time until they learned they had not been exposed.

In general, "there can be no recovery for emotional distress 'absent intentional conduct by a defendant or some physical injury to the plaintiff.'"  *Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 169 (Iowa 2002) (quoting *Mills v. Guthrie Cnty. Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 852 (Iowa 1990)).  There are two recognized exceptions to the rule—(1) "bystander liability based on the breach of a duty of care by the defendant not to cause emotional distress to those who witness conduct that causes serious harm to a close relative"; and (2) direct infliction of emotional distress where "the nature of the relationship between the plaintiff and the defendant is such that it supports the imposition of a duty of care on the defendant to avoid causing emotional harm to the plaintiff."  *Id.* at 170–71.

The appellants first contend that their claims for emotional distress arose in conjunction with a physical injury.  Two of the appellants, Boyer and Becerra-Shaffer, had blood testing done, and they claim they "experienced physical pain as a result of the blood draw."  Also, all of the appellants contend that they come

within the second exception to the general rule, stating, "medical professionals have a duty to exercise ordinary care to avoid causing emotional harm to patient[s] receiving medical services." The appellants state they had a reasonable fear of contracting a communicable and potentially lethal disease.

In *Kaufman v. Physical Measurements, Inc.*, 615 N.Y.S.2d 508, 508 (App. Div. 1994), a postal clerk was pricked by a needle while sorting mail. He sued the company that mailed the envelope, alleging physical injury and emotional distress based on his fear of contracting AIDS. *Kaufman*, 615 N.Y.S.2d at 509. Both the person for whom the needle was used and Kaufman tested negative for HIV. *Id.* at 508–09. The court concluded, "there is no objective medical evidence in this record to substantiate the concern that Kaufman has contracted or been exposed to HIV. Therefore, the claim for emotional distress is too remote and too speculative, and not compensable as a matter of law." *Id.* at 509. The court determined the defendant should be granted summary judgment. *Id.*

Similarly, in *Johnson v. American National Red Cross*, 578 S.E.2d 106, 107 (Ga. 2003), a medical patient was notified she received a blood transfusion from a donor who could have been exposed to HIV. The donor and the patient subsequently tested negative for HIV. *Johnson*, 578 S.E.2d at 107. The patient became very upset and stated she lived in fear she had HIV. *Id.* The Georgia Supreme Court determined the patient could not recover on her claims of emotional distress in the absence of actual exposure to HIV. *Id.* at 110. The court stated, "In the face of this complete absence of evidence of exposure, [the patient] feared that she was infected with the virus. However, the evidence compels a

finding that [the patient's] fears were unreasonable as a matter of law." *Id.* The court affirmed the grant of summary judgment to the defendant. *Id.*

Additionally, in *Pendergist v. Pendergrass*, 961 S.W.2d 919, 924 (Mo. Ct. App. 1998), the Missouri Court of Appeals found, "The majority of jurisdictions that have considered claims for infliction of emotional distress based on a fear of contracting AIDS have determined that actual exposure to the virus is a necessary requirement for the claim." (Collecting cases.) The court noted, however, that a minority of jurisdictions had "applied a more lenient approach," and required "only that the plaintiff's fear be reasonable." *Pendergist*, 961 S.W.2d at 925. The court concluded, "In Missouri, general tort principles and public policy concerns dictate the adoption of an actual exposure rule in fear of AIDS cases." *Id.* The court gave the following reasons for its conclusion: (1) "[I]t ensures that a genuine basis for the fear exists and that the fear is not premised on public misconceptions about AIDS"; (2) "[A]n actual exposure rule preserves an objective component in emotional distress cases necessary to ensure stability, consistency, and predictability in the disposition of those cases"; (3) "[T]he rule ensures that victims who are exposed to HIV or actually contract HIV as a result of a defendant's negligence are compensated for their emotional distress"; and (4) "[A]n actual exposure rule protects the justice system from becoming burdened with frivolous litigation." *Id.* at 926.

We conclude the actual exposure rule should be applied in Iowa for the reasons set out by the Missouri Court of Appeals. *See id.* The appellants concede that they were not actually exposed to a communicable disease. Their claims for emotional distress are too remote and speculative for them to be entitled to relief.

*See Kaufman*, 615 N.Y.S.2d at 509. Because the testing of Van Cleave and the appellants was negative, the appellants' fears of contracting a disease were unreasonable as a matter of law. *See Johnson*, 578 S.E.2d at 110. We conclude the district court properly granted summary judgment to IMMC.

We affirm the decision of the district court.

**AFFIRMED.**