Gary ANTHONY, On behalf of Himself and Others Similarly Situated, Plaintiff

v.

SMALL TUBE MANUFACTURING CORP., doing business as Small Tube Products Corp., Inc.; Admiral Metals, Inc.; Tube Methods, Inc., and Cabot Corporation, Individually and as Successor in Interest to Cabot Berylco, Inc., Kawecki Berylco Industries, Inc. and the Beryllium Corporation c/o C.T. Corporation Systems, Defendants

and

Ametek, Inc.; Brush Wellman, Inc.; and Millennium Petrochemicals, Inc., formerly known as National Distillers and Chemical Corporation, Third–Party Defendants.

Civil Action No. 06–cv–4419.

United States District Court, E.D. Pennsylvania.

Sept. 30, 2008.

Ruben Honik, Esquire and Stephan Matanovic, Esquire, for Plaintiff.

Kenneth J. Warren, Esquire, Laura E. Krabill, Esquire, and Sharon F. McKee for Defendant Small Tube Manufacturing Corporation.

Rochelle M. Fedullo, Esquire and Kristi A. Buchholz, Esquire, for Defendant Admiral Metals Inc.

David C. Onorato, Esquire, Gregory W. Fox, Esquire, and Stephen M. Hladik, Esquire, for Defendant Tube Methods, Inc.

Neil S. Witkes, Esquire, Kathleen Campbell, Esquire, and Lynn R. Rauch, Esquire, for Defendant Cabot Corporation.

John C. Goodchild, III, Esquire, Kevin M. Donovan, Esquire, and Jonathan W. Light, Esquire, for Third–Party Defendant and Counter–Claimant Ametek, Inc.

Morton F. Daller, Esquire, Jeffery D. Ubersax, Esquire, and Jennifer L. Weed, Esquire, for Third–Party Defendant Brush Wellman, Inc.

Joseph M. Profy, Esquire, for Third–Party Defendant Millenium Petrochemicals, Inc.

### OPINION

JAMES KNOLL GARDNER, District Judge.

This matter is before the court on the Joint Motion for Summary Judgment filed on February 29, 2008 by defendant Cabot Corporation and third-party defendant Brush Wellman, Inc. The motion is joined by all defendants and third-party defendants.[1] After oral argument on the Joint

---

1. Defendants Small Tube Manufacturing Corp., Admiral Metals, Inc., and Tube Methods, Inc. and third-party defendants Ametek, Inc. and Millennium Petrochemicals, Inc. filed their Joinder of Defendants and Third–Party Defendants in Joint Motion for Summary Judgment on February 29, 2008. Plaintiff's Opposition to Defendants' Joint Motion for Summary Judgment was filed April 21, 2008.

Defendant Cabot Corporation and third-party defendant Brush Wellman, Inc. filed their Motion for Leave to File Reply in Support of Joint Motion for Summary Judgment on April 29, 2008. Plaintiff's Opposition to Defendants' Motion for Leave to File Reply Brief was filed May 13, 2008. By Order dated June 24, 2008, permission to file a proposed reply brief was granted. Defendant Cabot Corporation and third-party defendant Brush Wellman, Inc.'s Reply in Support of Joint Motion for Summary Judgment was filed on June 24, 2008.

Motion for Summary Judgment conducted June 13, 2008, I took the matter under advisement. Hence this Opinion.

In this class action, sole class representative plaintiff, Gary Anthony, is seeking establishment of a medical monitoring program on behalf of fellow employees of a beryllium plant who allegedly face an increased risk of contracting chronic beryllium disease as a result of their exposure to airborne beryllium. For the reasons expressed below, including the fact that plaintiff is not presently beryllium sensitized, I grant the Joint Motion for Summary Judgment and dismiss plaintiff's Class Action Complaint. However, plaintiff is not precluded from commencing a new action in the event he becomes beryllium sensitized or is diagnosed with chronic beryllium disease.

### JURISDICTION

Jurisdiction is based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of Pennsylvania. Defendant Small Tube Manufacturing Corp. is a citizen of Delaware and Pennsylvania. Defendant Admiral Metals, Inc. is a citizen of Massachusetts. Defendant Tube Methods, Inc. is a citizen of Pennsylvania. And defendant Cabot Corporation is a citizen of Delaware and Massachusetts.

This court has supplemental jurisdiction over the third-party claims in this matter pursuant to 28 U.S.C. § 1367.[2]

### VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Sellersville, Berks County, Pennsylvania, which is located in this judicial district.

### PROCEDURAL HISTORY

#### Pleadings

Plaintiff, Gary Anthony, commenced this lawsuit on September 7, 2006 by filing a Class Action Complaint in the Philadelphia County Court of Common Pleas. Defendant Cabot Corporation timely removed the action to this court on October 4, 2006 pursuant to the Class Action Fairness Act of 2005, Pub.L.No. 109–2, 119 Stat. 4 (2005) (codified in scattered sections of Title 28 of the United States Code).

The Class Action Complaint alleges that defendants were negligent in the manufacturing, distribution and sale of beryllium products and have exposed members of the putative class to potentially hazardous levels of beryllium. The complaint asserts a single claim for negligence by Gary Anthony individually and as sole class representative on behalf of a putative class of employees and former employees of the U.S. Gauge facility[3] in Sellersville, Pennsylvania. The complaint alleges that the members of the proposed class were exposed to airborne beryllium during their employment at the plant and, as a result of

---

**2.** Third-party plaintiff Small Tube Manufacturing Corp. filed a third-party complaint against third-party defendant Millennium Petrochemicals, Inc. for indemnification and contribution under Pennsylvania state law.

Third-party plaintiff Tube Methods, Inc. filed an amended third-party complaint against third-party defendant Brush Wellman, Inc. for indemnification and, in the alternative, contribution under Pennsylvania state law.

Third-party plaintiff Cabot Corporation filed a third-party complaint against third-

party defendant Ametek, Inc. seeking indemnification under Pennsylvania state law and a federal declaratory judgment pursuant to 28 U.S.C. § 2201.

**3.** According to paragraph 13 of the Class Action Complaint, from at least 1972 to the present, non-party U.S. Gauge owned and operated a plant in Sellersville, Pennsylvania, which processed beryllium and products containing beryllium.

their exposure, face an increased risk of contracting beryllium-related diseases, including chronic beryllium disease (CBD).[4]

The putative class is defined as "[a]ll current and former employees of the U.S. Gauge facility who have ever been exposed to one or more of the Defendants' beryllium-containing products for a period of at least one (1) month while employed at the U.S. Gauge facility." [5] The class is alleged to consist of at least several thousand members.[6] Plaintiff avers that the U.S. Gauge facility utilized beryllium-containing products from at least 1972 to the present.[7]

Plaintiff, on behalf of the putative class, seeks the establishment of a medical monitoring program, or the costs thereof, funded by the named defendants and administered under court supervision. Plaintiff seeks lifetime testing as well as preventative and diagnostic screening. Plaintiff also seeks costs and attorney fees.

On November 2, 2006, plaintiff moved to remand this matter to Philadelphia County Court of Common Pleas pursuant to the home-state controversy exception to the Class Action Fairness Act of 2005. By Order and accompanying Opinion dated September 27, 2007, I denied plaintiff's motion to remand. See *Anthony v. Small Tube Manufacturing Corporation,* 535 F.Supp.2d 506 (E.D.Pa.2007).

### Rule 16 Scheduling Conference

On February 13, 2008, I conducted an informal pretrial scheduling conference in accordance with Rule 16 of the Federal Rules of Civil Procedure. Pursuant to the

agreement of counsel, I filed a Rule 16 Status Conference Order dated February 13, 2008. The order set various case management deadlines applicable to this case, including a March 4, 2008 deadline to file all dispositive motions. I also scheduled oral argument on the pending dispositive motions for June 13, 2008.

My February 13, 2008 Rule 16 Status Conference Order set a bifurcated discovery schedule, separating class certification discovery and merits discovery. However, the order did not restrict the amount or type of discovery which plaintiff could undertake prior to the deadline to file dispositive motions or after the deadline had passed.[8]

### Stipulation

By a separate Order dated February 13, 2008, I approved a stipulation agreed to by the parties at the Rule 16 scheduling conference. The stipulation states: "It is hereby stipulated by and between all the parties to the within action that plaintiff, and class representative, Gary Anthony, has taken a single blood BeLPT (beryllium lymphocyte proliferation test) and that such test was negative and that plaintiff is not presently beryllium sensitized."

## CONTENTIONS

### Contentions of Defendants and Third–Party Defendants

Defendants[9] assert that plaintiff cannot prevail in this action either individually or on behalf of the putative class because he

---

4. Class Action Complaint, ¶ 17–19.

5. Class Action Complaint, ¶ 24(a).

6. Class Action Complaint, ¶ 28.

7. Class Action Complaint, ¶ 13.

8. By Order dated April 19, 2008, I reiterated that plaintiff could conduct any discovery he

deemed necessary to oppose the Joint Motion for Summary Judgment.

9. As used here, "Defendants" refers to all defendants and third-party defendants which have joined in the Joint Motion for Summary Judgment, which includes all of the defendants and third-party defendants in this action.

has stipulated that he is not sensitized to beryllium. Defendants aver that as a matter of Pennsylvania law beryllium sensitization is required to sustain a claim for medical monitoring based on exposure to beryllium.

Defendants contend that without being sensitized to beryllium, plaintiff cannot demonstrate that he is at a significantly increased risk of contracting chronic beryllium disease (CBD) (the only known latent disease which results from beryllium exposure). Thus, because plaintiff Anthony is not sensitized to beryllium, defendants argue that plaintiff's action cannot be maintained on behalf of himself individually or on behalf of the class.

Defendants aver that "sensitization" is the initial response of a person's immune system to a material it recognizes as an antigen. Defendants contend that only a small percentage of the overall population (estimated between 1% and 3%) is susceptible to becoming sensitized to beryllium and that genetic predisposition plays a role.

Defendants further assert that sensitization is not itself a disease because it alone does not cause any impairment or harm. Defendants claim that individuals can demonstrate they are sensitized only by showing two consecutive positive results using the beryllium lymphocyte proliferation test ("BeLPT").

Defendants aver that CBD occurs when a sensitized person develops an immune reaction to beryllium in his or her lungs which causes pathological changes that are detectable in a biopsy. Defendants assert that in order to be diagnosed with CBD, three conditions must be met: (1) exposure to beryllium; (2) sensitization demonstrated by two positive BeLPT test results; and (3) positive biopsy results.

Defendants contend that sensitization is a necessary precondition or precursor to the development of CBD, but sensitization

does not inevitably lead to CBD. In other words, defendants assert that one must be sensitized to beryllium in order to develop CBD, but sensitization alone does not always lead to CBD because not everyone who becomes sensitized will develop CBD. Moreover, defendants aver that a small percentage of those who are sensitized will lose their sensitization over time. Defendants also contend that this is the current scientific understanding of CBD to which all experts in this case agree.

Defendants base their arguments in favor of summary judgment principally on the Superior Court of Pennsylvania's decision in *Pohl v. NGK Metals Corporation,* 936 A.2d 43 (Pa.Super.2007), *allocatur denied,* 952 A.2d 678 (Pa.2008) (per curiam). Defendants contend that the *Pohl* decision is analogous to the within action and is binding on this court absent persuasive evidence that the decision would not be followed by the Supreme Court of Pennsylvania (which defendants assert has not been offered by plaintiff).

Defendants argue that in *Pohl* the Superior Court affirmed the trial court's entry of summary judgment in favor of defendants in a medical monitoring action where plaintiffs alleged they had been exposed to airborne beryllium, but failed to demonstrate that they were sensitized to beryllium. Defendants assert that the Superior Court's decision in *Pohl* specifically rejected plaintiff's experts' conclusions that mere exposure to beryllium is sufficient to create a significantly increased risk of contracting CBD. Defendants aver that neither the science governing the claims, the method of exposure (airborne occupational in the within action versus ambient air residential in *Pohl*), or the differing state procedural laws and summary judgment standard are sufficient bases to distinguish *Pohl* from the within action.

Defendants further assert that Pennsylvania courts have not limited their applications of *Pohl* to the specific circumstances of that case. Defendants contend that multiple state trial court decisions (in thirty-one cases involving fifty individuals) have awarded summary judgment to defendants on claims virtually identical to plaintiff Anthony's individual claim, including claims involving occupational exposures to beryllium which were supported by similar expert declarations. Defendants contend that all of these Pennsylvania cases were decided based on the indisputable facts that CBD can be contracted only once sensitization occurs, and that only a subset of individuals who are occupationally exposed to beryllium will become sensitized.

In sum, defendants argue that mere exposure to beryllium without beryllium sensitization is insufficient to maintain a medical monitoring action under Pennsylvania law.

### Plaintiff's Contentions

Plaintiff contends that summary judgment is inappropriate. Plaintiff asserts that the bifurcated discovery (separate class certification discovery and merits discovery) in this case has yet to commence,[10] but that even at this early juncture the record reveals disputes concerning genuine issues of material fact about the risks to which the putative class has been subjected and factual disputes regarding whether the elements of medical monitoring under Pennsylvania law can be satisfied in this matter.[11]

Plaintiff argues that all individuals exposed to beryllium are at risk for the development of beryllium-related health effects. Plaintiff avers that beryllium exposure causes CBD, which is a multi-symptom disorder featuring the development of granulomatous inflammation after exposure and subsequent sensitization to metal beryllium.

Plaintiff avers that the pathogenesis of CBD begins with the development of a specific immune response to beryllium, known as sensitization, which can be detected through the BeLPT. Plaintiff further asserts that when inflamation appears in the target organs, especially the lungs, one has progressed to CBD. Plaintiff contends that the inflamation may manifest as granulomas or mononuclear interstitial infiltrates, which can lead to irreversible scar tissue formation. Plaintiff claims that one diagnoses CBD by demonstrating such inflamation and/or scar tissue in target organs of sensitized individuals.

Plaintiff asserts that his expert declarations offered in opposition to the Joint Motion for Summary Judgment make clear that the putative class is at a significantly increased risk of contracting CBD and should be medically monitored, including diagnostic monitoring for the development of beryllium sensitivity. Plaintiff contends that it has long been known that machinists of beryllium are at a significantly in-

---

10. As stated above, by Rule 16 Scheduling Conference Order dated February 13, 2008 and by Order dated March 19, 2008, plaintiff was given an opportunity to conduct discovery to rebut summary judgment. Plaintiff has not filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f) that "shows ... for specified reasons, it cannot present facts essential to justify its opposition". Fed.R.Civ.P. 56(f).

11. During oral argument plaintiff cited the recent decision of the United States Court of Appeals for the Eleventh Circuit in *Parker v. Wellman*, 230 Fed.Appx. 878 (11th Cir.2007), in support of his argument that expert disagreements regarding the nature of beryllium sensitization may create a genuine issue of material fact. As explained in the Discussion section, below, the *Parker* case is distinguishable on a number of different grounds from the within action.

creased risk of contracting CBD, and, therefore, summary judgment is inappropriate in this case.

Plaintiff contends that *Pohl v. NGK Metals Corporation* is neither persuasive, nor controlling, and is distinguishable from the within action. Plaintiff asserts that res judicata (claim preclusion) and stare decisis principles do not apply here because the parties, facts and circumstances presented in the two cases significantly differ.

Plaintiff contends that the major factual difference between the within action and the *Pohl* case is that *Pohl* involved claims by a residential population (i.e., those residing around a beryllium processing plant) based on exposure to beryllium in the ambient air whereas the within action is composed of a class with occupational airborne beryllium exposure. Plaintiff avers that there is much greater scientific knowledge concerning the effects and tolerances of occupational airborne beryllium exposure than exposure from ambient air around a plant facility. Moreover, plaintiff argues that the experts in the within matter have come to vastly different scientific and legal conclusions than the experts involved in *Pohl.*

Plaintiff argues that, at best, *Pohl* stands for the proposition that the plaintiffs in that case were unable to demonstrate that their specific exposures to beryllium rose to the level of creating a significantly increased risk of harm. Plaintiff agrees with defendants that mere exposure to beryllium in general does not present a significantly increased risk of disease. However, plaintiff argues that in the unique factual circumstances presented in the within action, the specific exposures to defendants' products to which this proposed class was exposed in the work place has indeed created a significantly increased risk to them.

Plaintiff contends that third-party defendant Brush Wellman's own pronouncements regarding its medical monitoring program belie defendants' positions. Plaintiff avers that certain Brush Wellman documents which were sent to its employees, former employees and contractors show that medical monitoring provides an early warning function which can lessen the impact of CBD. Plaintiff further asserts that, according to these documents, symptom avoidance is the purpose of monitoring, and CBD may be avoided altogether when it is detected early.

Thus, plaintiff contends that Brush Wellman has recognized the use of the BeLPT for many years and the importance of early detection to control CBD. In addition, plaintiff avers that employees of the federal Occupational Safety and Health Administration who have participated in inspections of industries where they may be exposed to beryllium are eligible for a voluntary federal program which includes testing and medical monitoring.

Plaintiff also argues that the Declaration of Lawrence H. Repsher, M.D. (defendants' expert) should be disregarded because it consists of unsupported speculation which does not meet the standard of reliability required under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469, 480–481 (1993), and Federal Rule of Evidence 702. Specifically, plaintiff contends that Dr. Repsher conceded at his deposition that he had no knowledge about the nature of plaintiff's work experience or the beryllium products to which Anthony and the putative class were allegedly exposed. Plaintiff avers that Dr. Repsher did not know where the U.S. Gauge facility is located, opining that it was somewhere in Reading, Pennsylvania, when it is in fact located in Sellersville, Pennsylvania.

Plaintiff also contends that the opinions offered by Dr. Repsher are not relevant because he has not offered a specific opinion concerning whether medical screening or surveillance would be appropriate at the U.S. Gauge facility. Plaintiff asserts that the only opinion offered by Dr. Repsher is that plaintiff, having a single negative BeLPT test result for sensitization to beryllium, which he concedes could be a false negative, is not at a significant increased risk of developing CBD.

### Defendants' Reply to Plaintiff's Contentions

Defendants respond that plaintiff's argument concerning third-party defendant Brush Wellman's voluntary medical monitoring program for beryllium exposure is a "red herring". Defendants contend that Brush Wellman is free to decide that any risk to any of its employees of contracting CBD is sufficient for it to voluntarily institute a medical surveillance program. However, defendants argue that Brush Wellman's choice has no bearing on whether plaintiff and the putative class are *entitled* to a medical monitoring as a matter of Pennsylvania law.

Defendants reject plaintiff's argument concerning the admissibility of the expert report of Dr. Repsher. Defendants contend that Dr. Repsher's declaration sets forth basic facts regarding beryllium sensitization and CBD, and that Dr. Glazer, plaintiff's expert, agrees with those basic facts. Defendants assert that Dr. Repsher did not purport to give any opinion specific to the U.S. Gauge facility, or plaintiff's work therein, because he was never asked to do so. However, defendants argue (implicitly) that the expert declaration of Dr. Repsher is sufficiently reliable and relevant for the assertions contained therein and should not be disregarded.

### EVIDENTIARY CHALLENGES[12]

■ Plaintiff's opposition to the Joint Motion for Summary Judgment mounts a challenge to defendants' expert pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Federal Rule of Evidence 702. In appropriate circumstances, the court may conduct a *Daubert* inquiry without a hearing and in connection with a summary judgment motion. *Oddi v. Commonwealth of Pennsylvania, Department of Transportation*, 234 F.3d 136, 154 (3d Cir.2000); *see also Chester Valley Coach Works v. Fisher–Price, Inc.*, 2001 WL 1160012, at *12–*13 (E.D.Pa. Aug.29, 2001) (Surrick, J.). However, I need not conduct a full *Daubert* hearing or Rule 702 argument because the challenges to admissibility offered by plaintiff are not in fact proper *Daubert* or Rule 702 challenges.

Plaintiff's challenges the Declaration of Lawrence H. Repsher, M.D. on the basis of its reliability and relevance. With regard to reliability, plaintiff contends that Dr. Repsher is not familiar with plaintiff Anthony's exposure to beryllium or the exposure of the putative class. Plaintiff asserts that during his deposition, Dr. Repsher indicated that he was unfamiliar with the facts of this case, including the location of the facility where plaintiff worked (and where his exposure to beryllium allegedly occurred) as well as the beryllium-containing products to which he was exposed. With regard to relevance, plaintiff argues that Dr. Repsher failed to opine regarding the ultimate issue of whether medical monitoring of plaintiff and the putative class is merited in this case.

---

**12.** Because resort to the Declaration of Lawrence H. Repsher, M.D. is critical in determining the undisputed facts in the within matter, the propriety of this expert declaration must be determined at the outset.

Plaintiff's criticisms of the limitations of Dr. Repsher's declaration are poignant, but such criticisms do not go to the reliability or relevance of the declaration. The declaration by Dr. Repsher provides expert opinions regarding beryllium, beryllium exposure, diagnostic testing methods, beryllium sensitization and the course and diagnostic symptoms of chronic beryllium disease.

Dr. Repsher may have revealed during his deposition that he was not familiar with plaintiff Anthony or the members of the putative class involved in this case. However, the basis for the scientific and medical averments contained in his report remain unchallenged at this juncture and plaintiff does not contend that Dr. Repsher's conclusions regarding beryllium sensitization are inaccurate or inapplicable. Similarly, Dr. Repsher did not need to opine regarding whether medical monitoring is appropriate for plaintiff and the putative class in this case in order for his expert testimony to be relevant.

Plaintiff's attacks are essentially challenges to the weight of the evidence. This type of challenge is reserved for the trier of fact. *See ID Security Systems Canada, Inc. v. Checkpoint Systems, Inc.,* 249

F.Supp.2d 622, 691 (E.D.Pa.2003) (Robreno, J.). Accordingly, the Declaration of Lawrence H. Repsher, M.D. will be considered insofar as it provides undisputed scientific facts which will assist the court in the resolution of defendants' joint summary judgment motion. *See e.g. Lobianco v. Eckerd Corporation,* 2004 WL 3009005, at *3 (E.D.Pa. December 29, 2004) (Savage, J.).

### UNDISPUTED FACTS

Pursuant to my Rule 16 Status Conference Order dated February 13, 2008, defendants submitted a statement of material facts to which there is no genuine dispute in conjunction with their Joint Motion for Summary Judgment.[13] Plaintiff filed a response to defendants' proposed undisputed facts and disputed every statement of fact except the three facts which embody the court-approved February 13, 2008 stipulation.[14] However, scrutiny of the memoranda submitted by the parties, close examination of their attached expert declarations,[15] and a review of the parties' statements and concessions during oral argument[16] reveals that the universe of disputed facts is significantly smaller.[17]

13. The full title of the document is Statement of Material Facts to Which There Is No Genuine Dispute by Defendants Cabot Corporation and Third–Party Defendant Brush Wellman Inc.

14. *See* Plaintiff's Counter–Statement, Pursuant to the Court's February 13, 2008 Order, in Response to Defendants' Statement of Material Facts About Which No Dispute Is Claimed, which opposition was filed April 21, 2008.

15. The five expert declarations which I have reviewed as part of my consideration of the Joint Motion for Summary Judgment are as follows: Declaration of Lawrence H. Repsher, M.D., F.C.C.P. (hereafter, "Repsher Decl."); Supplemental Declaration of Lawrence H. Repsher, M.D., F.C.C.P. (hereafter, "Repsher Suppl. Decl."); Declaration of Craig S. Glaz-

er, M.D., M.S.P.H., F.C.C.P. (hereafter, "Glazer Decl."); Supplemental Declaration of Craig S. Glazer, M.D., M.S.P.H., F.C.C.P. (hereinafter, "Glazer Suppl. Decl."); Declaration of Adam M. Finkel, Sc.D., M.P.P., CIH (hereafter, "Finkel Decl.").

Dr. Glazer and Dr. Finkel are plaintiff's experts. Dr. Repsher is defendants' expert.

16. Notes of Testimony of oral argument conducted in Allentown, Pennsylvania on June 13, 2008, styled "Transcript of Joint Motion for Summary Judgment Before The Honorable James Knoll Gardner[,] United States District Judge" ("N.T.").

17. Plaintiff's tactic of disputing facts which are not genuinely in dispute has delayed the prompt disposition of this action.

## Beryllium

The undisputed facts establish that beryllium is a strong, lightweight metal with a high melting point, high stiffness-to-weight ratio, and excellent thermal and electrical conductivity. Beryllium is used as a pure metal but more frequently it is incorporated at low levels into alloys. Beryllium cooper is the most widely used alloy, but beryllium is also combined with aluminum, nickel and magnesium, to produce a panoply of products from non-sparking tools, and aircraft brakes, to laser targeting systems and nuclear weapons.[18]

## Chronic Beryllium Disease

The undisputed facts also establish that chronic beryllium disease is a lung disorder caused by exposure to beryllium. CBD is a lung disorder which occurs when a person's immune system overreacts to inhaled particles of beryllium and produces pathological changes in the lungs called granulomas.[19]

The lungs and thoracic lymph nodes are the primary sites of involvement. However, CBD can involve the skin, liver, myocardium, salivary glands, bones, and affect mineral metabolism.[20]

A positive diagnosis of CBD requires (1) a finding that a person has become "sensitized" to beryllium [21] and (2) a finding of granulomas on a pulmonary biopsy.[22] A person who is not sensitized to beryllium cannot develop CBD.[23]

Chronic beryllium disease is often described as a hypersensitivity disorder. It occurs when a sensitized person develops an immune reaction to beryllium in his lungs which causes pathological changes detectable by biopsy called granulomas. Granulomas are accumulations of beryllium-specific T-lymphocytes around inhaled beryllium particles. Granulomatous inflammation can, but does not always, interfere with the absorption of oxygen, and can have health effects such as shortness of breath and fatigue.[24]

This inflammation manifests itself as granulomas or mononuclear interstital infiltrates. In addition, persistent inflammation can then lead to the build-up of irreversible scar tissue. Chronic beryllium disease is diagnosed by locating this inflammation and/or scar tissue in target organs of beryllium-sensitized individuals.[25]

Both the inflammation and the scarring can diminish organ function and lead to symptoms and impairment. However, because scarring is irreversible, the treatment of the disease is focused on reducing the inflammation with anti-inflammatory medications like prednisone. These medications can reduce the inflammation and thus preserve oxygen function in addition to preventing the build-up of scar tissue. Because scarring is irreversible, early detection of the disease and treatment initiation prior to excessive scar formation is the cornerstone of disease management along with removal from further exposure.[26]

Chronic beryllium disease is a multisystem granulomatous disorder which, when

18. Glazer Decl. at ¶ 5.

19. Repsher Decl. at ¶ 4; Glazer Decl. at ¶ 6.

20. Glazer Decl. at ¶ 6.

21. Repsher Decl. at ¶ 4, 14, 17; Glazer Decl. at ¶ 6–7.

22. Repsher Decl. at ¶ 4; Glazer Decl. at ¶ 7–8; N.T. at 69–70.

23. Repsher Decl. at ¶ 14; Glazer Decl. at ¶ 6–7.

24. Repsher Decl. at ¶ 7.

25. Glazer Decl. at ¶ 8.

26. Glazer Decl. at ¶ 9.

left untreated, can cause significant disability, or even premature death. It is caused only by exposure to beryllium. The literature reflects that one can progress to the disease in as short as three months, or as long as over forty years, of initial exposure.[27]

Occupational exposure cases of the disease are described in the literature. High levels of exposure are not required for development of the disease. Workers with minimal exposure, including security guards and administrative personnel, have developed CBD. In addition, community cases involving individuals living close to beryllium production facilities are also described in the literature. These individuals were exposed to elevated beryllium levels because of air contamination from the plant.[28]

As a metal, beryllium is not destroyed by the body and may reside in tissue for decades. Thus, ongoing or repeat exposure to beryllium is not required to develop beryllium-related health effects.[29]

### Sensitization

The following facts and opinions concerning sensitization are also undisputed.

In order to develop CBD, individuals exposed to beryllium must develop a specific immunological response to beryllium particles known as sensitization.[30] In other words, CBD results from a body's immunologic response to beryllium exposure. This response is similar to an allergy, in that only those individuals genetically predisposed to this reaction may contract beryllium sensitivity.[31] The amount of beryllium to which an individual is exposed does not determine whether that individual may become beryllium sensitized.[32]

Sensitization is the initial response of a person's immune system to a material that it recognizes as an antigen (in this instance beryllium). The immune systems of sensitized individuals recognize beryllium as an antigen and will react to subsequent beryllium exposures. Sensitization occurs when, after exposure to an antigen, the immune system develops white blood cells, called "T-lymphocytes", which are capable of mounting a specific response to that antigen if they see it again.[33]

These lymphocytes circulate in the bloodstream along with thousands of other types of T-lymphocytes. By themselves, they cause no impairment or harm of any kind. Sensitization is not a disease.[34]

Sensitized individuals typically have little or no symptoms and are unlikely to be identified in the course of routine medical care. Sensitization alone does not generally cause any known adverse health effects (i.e., it is asymptomatic).[35]

Nevertheless, beryllium sensitization is considered an abnormal physiologic immune response and is not found in unexposed persons. When inflammation then appears in target organs, especially the lung, one has progressed to chronic beryllium disease.[36]

### Beryllium Test

Finally the undisputed facts establish that sensitization to beryllium is detected by use of the beryllium proliferation test

---

**27.** Glazer Decl. at ¶ 6, 11, 17.

**28.** Glazer Decl. at ¶ 10, 17.

**29.** Glazer Suppl. Decl. at ¶ 8.

**30.** Repsher Decl. at ¶ 5; Glazer Decl. at ¶ 7; see also Finkel Decl. at ¶ 15.

**31.** Repsher Decl. at ¶ 5, 17.

**32.** Glazer Decl. at ¶ 10.

**33.** Repsher Decl. at ¶ 5.

**34.** Repsher Decl. at ¶ 5.

**35.** Glazer Decl. at ¶ 7.

**36.** Glazer Decl. at ¶ 7; Glazer Suppl. Decl. at ¶ 4.

("BeLPT").[37] In the BeLPT test, cells from an individual's blood or from lung fluid are exposed to beryllium salts to determine whether the immune system recognizes beryllium as an antigen.[38] If the test result is confirmed as positive, this test demonstrates that an individual is sensitized to beryllium.[39]

Like every other test in medicine, the BeLPT is not perfect, and both false positives and false negatives may occur utilizing the BeLPT. False negatives are more common.[40] Therefore, only a positive test for sensitization, repeated twice, indicates that a person might develop chronic beryllium disease in the future.[41] However, this does not change the fact that individuals must demonstrate that they are beryllium sensitized in order to be diagnosed with CBD.[42]

As noted above, with regard to plaintiff himself, the parties have stipulated that: (1) plaintiff Gary Anthony, the class representative, has taken a single blood BeLPT (beryllium lymphocyte proliferation test); (2) the test was negative; and (3) plaintiff is not presently beryllium sensitized.

### STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986); *Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company,* 316 F.3d 431, 433 (3d Cir.2003). Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. *Anderson, supra.*

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *Watson v. Eastman Kodak Company,* 235 F.3d 851, 858 (3d Cir.2000). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *Ridgewood Board of Education v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir.1999); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

### DISCUSSION

 In this federal lawsuit based upon diversity of citizenship jurisdiction, I must apply the substantive law of Pennsylvania. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1938); *Chin v. Chrysler LLC,* 538 F.3d 272, 278 (3d Cir.2008). Under Pennsylvania common law, a plaintiff must prove each of the following factors to sustain a medical monitoring claim:

(1) exposure greater than normal background levels;

---

37. Repsher Decl. at ¶ 8; Glazer Decl. at ¶ 7; Glazer Suppl. Decl. at ¶ 13.

38. Repsher Decl. at ¶ 8.

39. Repsher Decl. at ¶ 8; Glazer Decl. at ¶ 7.

40. Repsher Decl. at ¶ 10, 15; Glazer Suppl. Decl. at ¶ 14.

41. Repsher Decl. at ¶ 15; Glazer Suppl. Decl. at ¶ 4.

42. Repsher Decl. at ¶ 4, 14, 17; Glazer Decl. at ¶ 6–7; N.T. at 68–69.

(2) to a proven hazardous substance;

(3) caused by the defendant's negligence;

(4) **as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;**

(5) a monitoring procedure exists that makes early detection of the disease possible;

(6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and

(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Redland Soccer v. Department of the Army,* 548 Pa. 178, 195–196, 696 A.2d 137, 145–146 (1997) (emphasis added).[43]

■ Expert testimony is required to prove these elements. *Redland Soccer,* 548 Pa. at 196, 696 A.2d at 146. Moreover, in medical monitoring actions, the injury is the cost of the periodic medical examination necessary to detect the onset of physical harm. *Barnes v. American Tobacco Company,* 161 F.3d 127, 139 (3d Cir.1998) (internal citation omitted).

■ The Supreme Court of Pennsylvania has not squarely addressed the *Redland Soccer* medical monitoring requirements as applied to actions for immunologic diseases which have a similar pathogenesis to chronic beryllium disease.[44] If the Supreme Court of Pennsylvania has not addressed a precise issue, a prediction must be made, taking into consideration "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Nationwide Mutual Insurance Company v. Buffetta,* 230 F.3d 634, 637 (3d Cir.2000).

■ The decisions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the

---

**43.** In *Redland Soccer* the Supreme Court of Pennsylvania recognized medical monitoring claims based upon the following five policy rationales:

(1) medical monitoring promotes early diagnosis and treatment of disease or illness resulting from exposure to toxic substances caused by a tortfeasor's negligence;

(2) monitoring allows recovery for such expenses which avoids the potential for injustice of forcing an economically disadvantaged person to pay for expensive diagnostic examinations necessitated by another's negligence;

(3) monitoring affords toxic tort victims, for whom other sorts of recovery may prove difficult, immediate compensation for medical monitoring needed as a result of exposure;

(4) monitoring furthers the deterrent function of the tort system by compelling those who expose others to toxic substances to minimize risks and costs of exposures; and

(5) monitoring furthers an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease.

*Redland Soccer,* 548 Pa. at 194–195, 696 A.2d at 145 (quoting *Hansen v. Mountain Fuel Supply Company,* 858 P.2d 970, 976–977 (Utah 1993) (internal citations omitted)).

**44.** *Redland Soccer* was a class action pursuant to the Pennsylvania Hazardous Sites Cleanup Act, Act of October 18, 1988, P.L. 756, No. 108, as amended, 35 P.S. §§ 6020.101 to 6020.1305. In that case, the class sought medical monitoring on behalf of its members for their alleged exposure to hazardous materials through their use of a public park. The public park was formerly a depot site maintained by the Department of the Army and the Department of Defense. *Redland Soccer,* 548 Pa. at 182–183, 696 A.2d at 139.

highest court of the state would decide otherwise." *Edwards v. HOVENSA, LLC,* 497 F.3d 355, 361 (3d Cir.2007) (internal citation omitted).

### The Pohl Case

In *Pohl v. NGK Metals Corporation,* 936 A.2d 43 (Pa.Super.2007), *allocatur denied,* 952 A.2d 678 (Pa.2008) (per curiam), the Superior Court of Pennsylvania directly addressed the issue of medical monitoring for chronic beryllium disease as a result of exposure to beryllium in the ambient air.

In *Pohl,* three plaintiffs sought medical monitoring for chronic beryllium disease on behalf of themselves and a putative class. Two of the three plaintiffs resided within three-tenths of a mile of a beryllium processing plant (one for 48 years and one for 26 years), and the third plaintiff lived two blocks from the plant (for 16 years). However, none of them worked at the plant. None of three *Pohl* plaintiffs provided evidence that they were beryllium sensitized (only two of the three had taken the BeLPT, and both had tested negative). *Pohl, supra.*

The Philadelphia Court of Common Pleas held a class certification hearing and, on June 30, 2003, the court denied class certification. This decision was affirmed by the Superior Court of Pennsylvania. *See Pohl v. NGK Metals,* 863 A.2d 1239 (Pa.Super.2004), *allocatur denied,* 582 Pa. 718, 872 A.2d 1200 (2005). Thereafter, the three plaintiffs continued their legal actions in their individual capacities.

On December 23, 2005, the Philadelphia Court of Common Pleas granted summary judgment in favor of defendants and against the three plaintiffs individually. On October 11, 2007, the Superior Court affirmed the Philadelphia Court of Common Pleas decision granting summary judgment. *See Pohl v. NGK Metals Corporation,* 936 A.2d 43 (Pa.Super.2007), *al-locatur denied,* 952 A.2d 678 (Pa.2008) (per curiam).

The Superior Court upheld the *factual* finding by the Philadelphia Court of Common Pleas that the expert testimony presented at the class certification hearing established that beryllium sensitivity was a necessary precursor to the development of CBD. The court held that the import of this *undisputed* fact was that plaintiffs could not demonstrate that they are at a significantly increased risk of developing CBD because they had no evidence that they were beryllium sensitized.

Because plaintiffs failed to provide evidence demonstrating that they faced a significantly increased risk of developing CBD, the Superior Court concluded that plaintiffs had insufficient evidence to support their prima facie claims for medical monitoring pursuant to the fourth requirement of *Redland Soccer, supra.* Thus, the Superior Court held that the absence of evidence of beryllium sensitization was sufficient to support the award of summary judgment in favor of defendants. *Pohl,* 936 A.2d at 51–52.

Although the Superior Court affirmed the award of summary judgment, it adopted the Philadelphia Court of Common Pleas' determination regarding future medical monitoring actions by the plaintiffs. The Superior Court explicitly stated that even though plaintiffs' actions were dismissed, plaintiffs could bring another action for medical monitoring "if and when they have a positive BeLPT or develop CBD." *Pohl,* 936 A.2d at 52 n. 3.

The parties in the within action strongly disagree regarding the import of the Superior Court's *Pohl* decision. Defendants argue, in essence, that the Superior Court in *Pohl* held as a matter of (Pennsylvania) law, that beryllium actions may only be

maintained by those who are sensitized to beryllium.[45]

In contrast, plaintiff contends that *Pohl* is distinguishable because it involved individuals exposed to beryllium in the ambient air, not in an occupation setting, and involved significantly different expert conclusions. Moreover, plaintiff asserts that his experts have created genuine issues of material fact by opining that plaintiff Anthony's occupational exposure to beryllium puts him at a significantly increased risk of developing CBD even though plaintiff is not beryllium sensitized.

Neither parties' position accurately reflects the current state of Pennsylvania law governing medical monitoring actions or the undisputed facts presented in the within action.

I disagree with defendant's characterization of the Superior Court's decision in *Pohl*. The *Pohl* holding is not nearly as broad as defendants contend. *Pohl* was decided in the context of a summary judgment motion on the basis of the expert evidence which was presented during the class certification hearings. The decision was based upon the experts' agreement regarding beryllium sensitization, including the agreement that sensitization is a precursor to CBD, as well as other undisputed facts from their testimony.

Only after applying the unique facts presented in the case to the *Redland Soccer* factors, with specific references to the live testimony of the experts, did the *Pohl* court dismiss the claims of the three individual plaintiffs by citing the requirement that plaintiffs must face a significantly increased risk of contracting CBD as a result of their beryllium exposure. *Pohl*, 936 A.2d at 51–52.

I do not read the Superior Court decision in *Pohl* as establishing a positive rule of law that a plaintiff must prove that he or she is beryllium sensitized in all cases seeking medical monitoring for beryllium exposure. Nor do I read *Pohl* as establishing *as a matter of law* (as opposed to adopting an undisputed fact) that a positive BeLPT is a prerequisite to filing a medical monitoring suit.

Rather I interpret the *Pohl* opinion as a fact-specific decision based on the presence and absence of specific factual evidence. In my view, the Superior Court of Pennsylvania did not grant summary judgment by creating a new rule of law. Rather, it granted summary judgment by affirming the trial judge who weighed the evidence and concluded that plaintiffs failed to sustain their burden of establishing that they had a significantly increased risk of contracting CBD.

---

**45.** Defendants reference thirty-one decisions by The Honorable Allan L. Tereshko, the Supervising Judge of the Beryllium Docket in the Mass Tort Program in the Philadelphia Court of Common Pleas' Complex Litigation Center in support of their argument for summary judgment. Defendants aver that Judge Tereshko has applied the *Pohl* decision to medical monitoring claims by fifty individuals, dismissing each individual claim for monitoring in all instances. Reply in Support of Joint Motion for Summary Judgment, at page 5.

By Findings and Order filed January 18, 2008, Judge Tereshko dismissed four consoli-

dated beryllium cases, finding the undisputed facts in the four actions indistinguishable from *Pohl*. Although this decision contains some substantive analysis, it contains few of the individual circumstances involved in the cases and therefore provides little guidance for the instant case. *Schott v. NGK Metals Corp.*, No. 1247, May Term 2003, Control # 105091 (Phil.Ct.Com.Pl., January 18, 2008) (Tereshko, J.). Moreover, Judge Tereshko's disposition of the other twenty-seven beryllium cases cited by defendants consist of single-paragraph boilerplate dismissal Orders with no substantive analysis.

I base this interpretation, in part, on the following language in *Pohl:*

(1) "Summary judgment is proper if . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action . . . which in a jury trial would require the issues to be submitted to a jury. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action . . . and, therefore, there is no issue to be submitted to the jury." [46]

(2) "This record provides no support for Appellants' contention that they are sensitive to beryllium or face a significantly increased risk of contracting CBD." [47]

(3) "Appellants failed to produce evidence of facts essential to their cause of action for medical monitoring." [48]

(4) "Thus, the record in this case supports summary judgment because it contains insufficient evidence to make out a *prima facie* cause of action, and there is no issue to be submitted to the jury." [49]

■ It may be that, based upon the combination of the requirements of Pennsylvania tort law and the current scientific understanding regarding CBD, a prospective plaintiff seeking medical monitoring for exposure to beryllium must be beryllium sensitized, but it is not yet a rule of law.[50] Therefore, every case brought in

---

46. *Pohl,* 936 A.2d at 49 n. 8.

47. *Pohl,* 936 A.2d at 51.

48. *Pohl,* 936 A.2d at 52.

49. *Id.*

50. Recently, my colleague, United States District Judge Gene E.K. Pratter, handed down her Memorandum opinion in *Sheridan v. NGK Metals Corporation,* 2008 WL 4288028 (E.D.Pa. September 18, 2008) (Pratter, J.), a case strikingly similar to the within *Anthony v. Small Tube Manufacturing Corp.* matter. Judge Pratter and I reach the same results based upon very similar facts and arguments, involving some of the same counsel and witnesses.

I agree with the results, findings, conclusions and nearly all of the analysis in Judge Pratter's well-reasoned opinion. While we both rely upon, and apply, the decision in *Pohl v. NGK Metals Corporation,* 936 A.2d 43 (Pa.Super.2007) in reaching the identical result, I believe we analyze and interpret one aspect of the Superior Court's decision slightly differently.

I interpret *Pohl* as a fact-specific decision affirming the trial judge who weighed the evidence and concluded that plaintiffs failed to sustain their burden of establishing that they had a significantly increased risk of contracting chronic beryllium disease. I believe that in affirming the trial judge, the Superior Court concluded that there was no genuine issue of material fact precluding summary judgment because the parties' experts agreed that absent positive results from the BeLPT test indicting that plaintiffs were sensitized to beryllium, plaintiffs could not show that they face a significantly increased risk of contracting CBD.

I further believe that *Pohl* implies that if in a future case there were a bona fide dispute between competing experts concerning whether or not a plaintiff could show a significantly increased risk of CBD in the absence of a positive BeLPT for beryllium sensitization, it would be for the jury to decide, and summary judgment would be inappropriate.

Therefore, I concluded that in the future the trial court must adjudicate anew on a case-by-case basis whether or not to grant summary judgment in beryllium medical monitoring cases, based upon the unique facts and testimony presented, including any relevant expert scientific evidence.

On the other hand, I believe that Judge Pratter may interpret *Pohl* as establishing a positive rule of law which holds that in all future cases seeking medical monitoring for beryllium exposure, a plaintiff must prove that he or she is beryllium sensitized, and establishing as a matter of law that a positive BeLPT is a prerequisite to filing a medical monitoring suit.

this court must be adjudicated based on the unique facts and testimony presented, including any relevant expert scientific evidence. *See Resolution Trust Corporation v. Fidelity and Deposit Company of Maryland,* 205 F.3d 615, 635 (3d Cir.2000).

The fact that the *Pohl* decision is not nearly as broad as defendants contend does not serve to distinguish it from the within action, however. On the contrary, the scientific understanding presented by the experts in *Pohl* largely mirrors the understanding offered by the experts' declarations in the within action.

The undisputed facts presented in *Pohl* established that for an individual to be diagnosed with CBD, the individual must test positive for beryllium sensitization (whether the positive BeLPT is concurrent with, or, as is much more likely, appears before the development of CBD). The *Pohl* holding is premised upon the scientific fact that individuals who are not sensitized to beryllium cannot be diagnosed with CBD.

Similarly, it is undisputed in the within action that to be diagnosed with CBD one must be both beryllium sensitized (as demonstrated by a positive BeLPT test result) and have a positive pulmonary biopsy indicating the presence of granulomas. As stated throughout this Opinion, plaintiff has stipulated that he is not sensitized to beryllium.

All parties and experts in the within action agree that without being sensitized, plaintiff cannot be diagnosed with chronic beryllium disease.[51] Therefore, because plaintiff has no possibility of being diagnosed with CBD, he cannot show that as a proximate result of his exposure to beryllium, he has a significantly increased risk of contracting CBD, a latent disease.

I recognize that plaintiff's BeLPT test result may be a false negative, and there is a possibility that plaintiff may become sensitized to beryllium in the future. However, such speculative developments are not the factual circumstances presented to the court in connection with this Joint Motion for Summary Judgment. The facts presented are that plaintiff is not sensitized to beryllium and that a diagnosis of CBD requires beryllium sensitization. As the *Pohl* court indicated, if plaintiff does become sensitized, he may then pursue an action for medical monitoring.

Plaintiff's attempts to distinguish *Pohl* are unavailing. The means of exposure (occupational exposure versus resident population ambient air exposure) did not affect the *Pohl* decision. Although such distinctions could have conceivably altered the scientific statements and conclusions presented in plaintiff's expert declarations in the within action, they did not.

Nowhere did plaintiff's experts in the within case opine that the risk of contract-

---

**51.** Unlike the *Pohl* court, based upon the evidence presented in conjunction with the Joint Motion for Summary Judgment, I cannot conclude that beryllium sensitization is a necessary "precursor" or "precondition" to the development of CBD. In the within case, the parties' respective experts disagree regarding whether sensitization is a necessary condition for the development of CBD which must precede it (plaintiff's expert), or whether sensitization itself is the beginning stage of CBD in the progression of the disease (defendants' experts). *See e.g.* N.T. at 26, 29, 51–52, 55–57, 71 and 80.

Although it appears that based upon *Pohl*, the various decisions by Judge Tereshko cited by defendants, and the expert declarations, sensitization is in fact a necessary precursor condition to the development of CBD, at this juncture I may not weigh the competing expert evidence and reach that conclusion. This factual dispute does not preclude summary judgment, however, because, as explained throughout this Opinion, it is undisputed that a diagnosis of CBD requires beryllium sensitization and plaintiff is not beryllium sensitized.

ing chronic beryllium disease was greater in an occupational environment (including the U.S. Gauge facility in the within case) than in a residential population (the environment in the *Pohl* case). In fact, they offered the opposite conclusion. For example, plaintiff's expert Adam M. Finkel opined that the risk was the same in both populations:

> For purposes of estimating risk, we turn to data on the incidence of CBD in occupational populations-and whatever the relationship between exposure and disease is in these groups, the *same* relationship will apply in other populations. There is no theoretical basis or evidence to suggest that there are proportionately more or fewer "susceptibles" in the worker populations with CBD cases than there are in the community or other populations to which these risks can be analogized.... [52] (emphasis in original).

Similarly, plaintiff's expert Craig S. Glazer opined that the risk was the same in both populations:

> Cases of disease are well described [in the literature] in workers....In addition, community cases are also well described in individuals living close to beryllium production facilities.... [53] Numerous studies in a variety of workplaces have demonstrated that medical monitoring programs are effective at detecting both beryllium sensitization and chronic beryllium disease. This would be no less true among persons in an exposed community setting.[54]

Thus, plaintiff's own experts belie plaintiff's argument that *Pohl* is distinguishable from the within case because it involved individuals exposed to beryllium in the ambient air, not in an occupational setting,

and that therefore the *Pohl* holding does not apply to the within matter.

### Factual Disputes

Plaintiff contends that his experts have created genuine issues of material fact which preclude summary judgment by rendering opinions contrary to the opinions of defendants' experts. As noted above, defendants' expert opines that without being sensitized to beryllium, plaintiff cannot demonstrate that he is at a significantly increased risk of contracting chronic beryllium disease.

On the other hand plaintiff's experts opine that all individuals exposed to beryllium, including machinists like plaintiff, are at a significantly increased risk of contracting chronic beryllium disease, even before they become beryllium sensitized. For example, plaintiff's expert Dr. Glazer opines that all individuals exposed to beryllium are at risk for the development of beryllium related health effects [55], and that the risk attaches to the exposure before beryllium sensitivity is detected [56].

Similarly, plaintiff's expert Dr. Finkel states that the argument that sensitization *confers* risk is scientifically incorrect. Rather, he opines, sensitization reflects the *fact* of risk manifesting itself. He asserts that the risk is caused by the *exposure* to the hazards.[57]

A closer examination of the defense expert declaration, however, reveals that neither expert has the data necessary to support their conclusions in this regard, which are merely assumptions and speculation, rather than opinions. In other words, they do not have, or base their opinions upon, any beryllium level readings, meas-

52. Finkel Decl. at ¶ 17.

53. Glazer Decl. at ¶ 10.

54. Glazer Decl. at ¶ 12.

55. Glazer Decl. at ¶ 7.

56. Glazer Suppl. Decl. at ¶ 4.

57. Finkel Decl. at ¶ 15.

urements, or other exposure data from the U.S. Gauge plant.

For example, Dr. Finkel states:

In order to estimate cumulative exposures to this population, I would initially *expect to determine* whether OSHA [the United States Occupational Safety and Health Administration] conducted any beryllium sampling at this plant. Such data (*if they exist*) would enable me to derive (*with uncertainty*) exposure estimates for some historical periods. I will also be interested in any sampling data that the owners/operators generated. *Absent such data* at this point, *I cannot estimate* whether U.S. Gauge workers' exposure exceeded the LOAEL [Lowest Observed Adverse Effect Level].[58] (emphasis added).

. . . . .

[A] QRA [Quantitative Risk Assessment] for this population [is] essential *to determine how* substantial the exposures were, and thus how substantial the risks are.[59] (underline emphasis added) (italics emphasis in original).

On the other hand, the immunologic nature of chronic beryllium disease, including the requirement of beryllium sensitization for a positive diagnosis of CBD, is agreed upon by all experts in this case. Perfunctory legal conclusions and "naked" scientific assertions contained in expert declarations will not avert the award of summary judgment where the undisputed facts indicate summary judgment is proper. *Zenith Radio Corporation v. Matsushita Electric Industrial Company, Ltd.,* 494 F.Supp. 1190, 1231 n. 49 (E.D.Pa.1980); *see also Wiesfeld v. Sun Chemical Corporation,* 84 Fed.Appx. 257, 261–262 (3d Cir.2004); *Vollmert v. Wisconsin Department of Transportation,* 197 F.3d 293, 298 (7th Cir.1999).

*Parker v. Brush Wellman*

Furthermore, the United States Court of Appeals for the Eleventh Circuit's decision in *Parker v. Brush Wellman,* 230 Fed.Appx. 878 (11th Cir.2007), does not support plaintiff's position that summary judgment should be denied in the within action.

In *Parker,* the United States District Court for the Northern District of Georgia concluded that, among other things, beryllium sensitization alone was not an actionable injury under Georgia law. Therefore, the Georgia district court granted summary judgment against five beryllium-sensitized individuals. *Parker v. Brush Wellman, Inc.,* 420 F.Supp.2d 1355 (N.D.Ga. 2006).

The Eleventh Circuit reversed the district court, holding that the competing medical expert affidavits established a genuine issue of material fact regarding whether beryllium sensitization is a current "disease, pain or impairment." *Parker,* 230 Fed.Appx. at 884.

*Parker* was a diversity of citizenship case governed by the substantive law of Georgia. The issue decided by the *Parker* court was whether plaintiffs presented sufficient evidence to demonstrate that beryllium sensitization was alone a manifested disease and therefore actionable under Georgia law.

There is no analogous provision requiring an actual manifested injury in Pennsylvania law as enunciated in *Redland Soccer.* Moreover, the plaintiffs in the *Parker* action were all beryllium sensitized individuals, unlike the within action where plaintiff

---

**58.** Finkel Decl. at ¶ 23. ("OSHA" defined at Finkel Decl. ¶ 3; "LOAEL" defined at Finkel Decl. ¶ 21).

**59.** Finkel Decl. at ¶ 16. ("QRA" defined in subheading II, located above Finkel Decl. ¶ 11).

Anthony has explicitly stipulated he is not beryllium sensitized. The *Parker* action is simply too dissimilar to have any persuasive effect.

## SUMMARY OF DECISION

Thus, drawing all inferences in favor of plaintiff as non-movant, as I am required to do in ruling on a motion for summary judgment, and based on the undisputed facts presented by the parties in support of, and in opposition to, the Joint Motion for Summary Judgment, plaintiff cannot sustain his action for medical monitoring as result of his exposure to beryllium under Pennsylvania law. Plaintiff has stipulated that he is not sensitized to beryllium.

Without being sensitized to beryllium, plaintiff cannot be diagnosed with chronic beryllium disease. Therefore, plaintiff cannot demonstrate he is at a significantly increased risk of developing CBD, the only latent disease which results from exposure to beryllium. Accordingly, the Joint Motion for Summary Judgment is granted and plaintiff's claim, both individually and on behalf of the putative class, is dismissed.[60]

Notwithstanding my determination regarding plaintiff's medical monitoring claim, I recognize the anomalous outcome of this decision. Plaintiff is seeking medical monitoring, including diagnostic screening, on behalf of himself and a putative class. However, because plaintiff has received a negative result using one of the very diagnostic tools he seeks to utilize as a preventative measure, he cannot maintain either his own action or an action on behalf of the putative class seeking the very same diagnostic screen (along with other necessary medical treatment).

Although this result may at first blush appear contrary to the intent of the Supreme Court of Pennsylvania when it decided *Redland Soccer, supra,* the application of Pennsylvania law to the within matter is clear: where the facts presented to the court are that plaintiff cannot be diagnosed with the disease for which he seeks preventative screening and treatment, he cannot satisfy the element of *Redland Soccer* which requires exposure to a hazardous substance which causes a significantly increased risk of contracting a latent disease.

## CONCLUSION

For all the foregoing reasons I grant the Joint Motion for Summary Judgment and dismiss plaintiff Gary Anthony's Class Action Complaint against defendants Small Tube Manufacturing Corporation, Admiral Metals, Inc., Tube Methods, Inc. and Cabot Corporation. However, as explained above, should plaintiff in the future become sensitized to beryllium, the disposition of the within matter shall not bar any future legal action by plaintiff for medical monitoring.

---

60. Because summary judgment is being granted at this juncture in the action prior to class certification and because there are no remaining plaintiffs to serve as class representatives, I dismiss this action on behalf of the class as well as plaintiff Anthony individually. *Cf. Smolow v. Hafer,* 513 F.Supp.2d 418 (E.D.Pa.2007) (DuBois, S.J.) (citing *Gruber v. Price Waterhouse,* 1992 WL 240572, at *7 (E.D.Pa. Sept.15, 1992) (Ditter, S.J.)).